**UNITED STATES BANKRUPTCY COURT**
**EASTER DISTRICT OF TENNESSEE**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re:<br><br>**Restoration House, LLC,**<br><br>Debtor. | **Case No. 1:24-bk-10164-NWW**<br><br>**CHAPTER 11, SUBCHAPTER V** |

**SMALL BUSINESS DEBTOR'S PLAN OF LIQUIDATION**

This Plan of Liquidation is presented to you to inform you of the proposed Plan for or liquidating the assets of RESTORATION HOUSE LLC, and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY _____.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY _____. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: FARINASH & STOFAN, 100 WEST MLK BLVD., STE 816, CHATTANOOGA TN 37402.**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR _____ AT THE HISTORIC U.S. COURTHOUSE, COURTROOM A, 31 EAST 11TH STREET, CHATTANOOGA, TN 37402**

<u>**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THIS PLAN CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY, IF YOU HAVE ONE. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**</u>

APRIL 19, 2024
Amanda M. Stofan
Farinash & Stofan
100 West MLK Blvd., Ste. 816
Chattanooga TN 37402
amanda@8053100.com

# SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

This is a Plan to sell all of the Debtor's assets pursuant to Motion and Notice of Sale. The Debtor has contracted with a realtor to list the Debtor's sole asset, the real property located at 171 Greendale Lane, McDonald TN (the "Property"). The Debtor expects the Property to sell for approximately $1.9 million based on a recent appraisal. There are two secured creditors of the Debtor: Ronald and Deana Tripp ("the Tripps") who filed Claim No. 1 and are secured by the Property, and the Bradley County Tax Assessor for property taxes associated with the Property. There are no unsecured claims of the Debtor.

This Plan Provides for :

| One (1) | Classes of administrative claims; |
|---|---|
| One (1) | Classes of priority claims; |
| Two (2) | classes of secured claims; |
| One (1) | classes of non-priority unsecured claims; and |
| One (1) | class that is the Debtor's interest in property of the estate. |

This plan provides for the payment of administrative and priority claims. All creditors and equity security holders should refer to Article 2 of this Plan for information regarding the precise treatment of their claim.

# ARTICLE 1
# HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

### 1.1. Nature of the Debtor's Business.

Restoration House, LLC is a single member LLC that owns the real estate at 171 Greendale Lane in McDonald, Tennessee.

### 1.2. History of Business Operations of the Debtor

Restoration House LLC, was founded in 2021 by Greg Vogel to purchase the property in McDonald Tennessee to use as an event space and fellowship hall. Although there have been a few gatherings in the home, since it was purchased it has primarily been used as Mr. Vogel's personal residence. During that time either he or his other entity, Kingdom Purpose, LLC, paid the mortgage payments on the property.

### 1.3 Filing of the Debtor's Chapter 11 Case.

On January 24, 2024, the Debtor filed for Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §101 et seq., as amended, (the "Bankruptcy Code"). Pursuant to Section 1184 of the Bankruptcy Code, the Debtor continues to manage its business as a debtor-in-possession.

### 1.4. Legal Structure and Ownership.

Restoration House LLC was formed in the State of Wyoming. Greg Vogel is the sole member and current owner/operator of the company.

### 1.5. Debtor's Assets.

The Debtor's assets consist of the real estate further defined in the liquidation analysis attached to this Plan as Exhibit A.

### 1.6. Debtor's Liabilities.

The Debtor's liabilities consist of secured debt and tax debt

### 1.7. Current and Historical Financial Conditions.

The Debtor's intentions for a short-term rental and event space never actually materialized. During the LLC's existence, the only financial transactions were the payments to the Tripps on the mortgage. The Debtor never had a bank account nor kept financial records. Because the LLC is not a going concern, the Debtor is looking to sell the business asset at market value and pay the debts of the Debtor.

### 1.8. Events Leading to the Filing of the Bankruptcy Case.

At the time of the petition filing, the Debtor was attempting to negotiate catching up the

payments to the Tripps to avoid foreclosure on the real estate.  After receiving inaccurate information regarding the amount of debt owed, the Debtor, via Mr. Vogel, turned to bankruptcy to avoid losing the equity in the real estate.  After the filing of the bankruptcy, the estate employed a realtor and the real estate was listed for sale in early March, 2024.

    **1.9.**     **Significant Events During the Bankruptcy Case.**

Farinash & Stofan were employed by the Debtor via Court Order dated February 16, 2024.

Realtor Jeremy Parker was employed by the Debtor via Court Order dated February 21, 2024.

341 MOC was held on February 23, 2024.

Status Conference was held March 13, 2024.

    **1.10.**    **Projected Recovery of Avoidable Transfers**

The Debtor does not anticipate any actions regarding avoidable transfers.

## ARTICLE 2

## THE PLAN

The Debtor's Plan must describe how its Creditors will be paid.  Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment.  For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired.  A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled.  If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote.  A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan.  Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan.  A class that is not impaired is deemed to accept the Plan.

### 2.1. **Unclassified Claims.**

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

A. Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1. If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2. Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | $0.00 | Payment through the Plan as follows:<br><br>Paid on the Effective Date of the Plan. |
| Professional fees, as approved by the Bankruptcy Court | $10,000.00 Attorney Fees for the Debtor. $5,000.00 Chapter 11 Trustee Attorney Fees $5,000.00 Accountant Fees | Upon application under § 327 and after Bankruptcy Court approval, payment through the Plan not less than 14 days after the Order approving the fees is entered. |

B. Priority Tax Claims.

5

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| Internal Revenue Service | Unknown, but likely $0 as the Debtor is a pass-through entity and the taxes will be owed personally by Mr. Vogel. | 2021<br>2022<br>2023 | Paid in full on the effective date |

### 2.2    Classes of Claims and Equity Interests.

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A. Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impaired? | Treatment |
|---|---|---|---|---|
| Class #1 | *Secured claim of*: Ron and Deana Tripp<br>Collateral description: 171 Greendale Lane, McDonald, Tennessee<br><br>Claim No. 1: Amount: $842,657.76<br><br>Priority of lien: First<br><br>Total estimated claim: $842,657.76 | No | No | Adequate Protection Payment of $3500.00 per month pending the sale of the Property, then the allowed Claim paid in full out of the proceeds of the sale of the Property. |
| | *Secured claim of*: Bradley County Tax Assessor<br>Collateral description: 171 Greendale | No | No | Allowed Claim paid out of the proceeds of the sale of the Property. |

| | | | |
|---|---|---|---|
| Lane, McDonald, Tennessee<br><br>Claim Amount: $24,049.42<br>Priority of lien: Second<br><br>Total claim: $24,049.42 | | | |

B. Classes of Priority Unsecured Claims.

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The following chart lists all classes containing Claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impaired? | Treatment |
|---|---|---|---|
| | | | |

C. Class of General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 6, which contain general unsecured Claims against the Debtor:

| Class # | Description | Impaired? | Treatment |
|---|---|---|---|
| Class #3 | General Unsecured Class | No | Paid in full from the sale of the Property after the payment of priority and administrative claims. |

D. Class of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are Equity Interest holders. In a partnership, Equity Interest holders include both general and limited partners. In a limited liability company ("LLC"), the Equity Interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| Class #4 | Equity Interest Holders: Greg Vogel sole | Not Impaired | Mr. Vogel is selling the assets of the business – the Property - and retaining |

7

| | Member of Restoration House, LLC | | the balance of the sale proceeds that remain after the Debtor's debts are paid in full to satisfy his personal obligations in Middle District of Tennessee Case No. Case No. 3:22-er-00051. |
|---|---|---|---|

The following chart sets forth the Plan's proposed treatment of the class of Equity Interest holders:

### 2.3. Allowance and Disallowance of Claims

A. <u>Objection to Claims</u>. The Debtors or any party in interest may file an objection to any claim in any class on or before 90 days after the Effective Date. Objections not filed within such time will be deemed waived. If any claim or portion thereof is challenged by an objection, the claim shall be treated as a disputed claim.

B. <u>Disputed Claim</u>. A disputed claim is claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor(s), or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

C. <u>Delay of Distribution on Disputed Claims</u>. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. Notwithstanding this delay of distribution on disputed claims, distribution may, in the Debtors' sole discretion, be made on any portion of such disputed claim which is undisputed, pending resolution of the claim allowance as a whole.

D. <u>Settlement of Disputed Claims.</u> The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. Following Confirmation and closing of the case, the Debtors shall retain the authority to settle and compromise claims with consent of the settling claimholder, and without the need for Court intervention or approval.

E. <u>Voiding of Liens</u>. **Except as otherwise provided under the Plan, Confirmation will void pursuant to § 506(d) all liens in excess of the Allowed Secured Claims.**

### 2.4. Treatment of Executory Contracts and Unexpired Leases.

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

Check all that apply:

[  ] Rejection of Executory Contracts and Unexpired Leases.

The Debtor has no Executory Contracts to Reject.

### 2.5. Means for Implementation of the Plan.

The Debtor intends to sell the only asset of the company. The proceeds from the sale will be divided pursuant to the terms of this Plan.

On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor. The Debtor expects to sell the property and satisfy all claims against the Debtor in full with the proceeds from the sale.

### 2.6. Payments.

The Debtor anticipates that all creditors will be paid at the closing of the real estate, and the balance of funds will be held in trust by the Subchapter V Trustee pending further Order of this Court.

If the Plan is confirmed under §1191(a), the Debtor shall make Plan payments except as otherwise provided in the Plan or in the order confirming the Plan.

If the Plan is confirmed under section § 1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the Trustee shall make all Plan payments to creditors under the Plan.

### 2.7. Post-Confirmation Management.

Due to the this Plan being a liquidating Plan, it is not necessary to appoint Post-Confirmation Officers/Managers of the Debtor.

### 2.8. Tax Consequences of the Plan.

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

### 2.9. Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan

Debtor has provided recent financial information as of the date of filing. Because the Debtor is currently not operating there is no projected income beyond the monthly rent payments and what will be realized by the sale of Debtor's real estate.

## ARTICLE 3

## FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

**3.1.    Ability to Initially Fund Plan.**

If the Court approves a Motion and Notice to Sell Free and Clear of Liens and the sale is at market value, the Debtor believes that the Debtor will have sufficient cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date.

**3.2.    Ability to Make Future Plan Payments And Operate Without Further Reorganization.**

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan, however, because the Debtor is currently not operating and unable to resume operations as the Debtor, there is no projected income beyond what will be realized by the sale of Debtor's assets. The Debtor will not be operating, and therefore there is no Disposable Monthly Income calculated.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

## ARTICLE 4
## LIQUIDATION ANALYSIS.

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation.  A liquidation analysis is attached hereto as Exhibit A.

## ARTICLE 5
## NO DISCHARGE OF DEBTOR

**5.1.**  No Discharge. In accordance with § 1141(d)(3) of the Bankruptcy Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

## ARTICLE 6
## GENERAL PROVISIONS.

**6.1.    Title to Assets.**

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the

order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 6.2. Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 6.3. Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4. Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5. Captions.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6. Modification of Plan.

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on

the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**6.7.    Final Decree.**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE 7
## FREQUENTLY ASKED QUESTIONS

**What Is the Debtor Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of reorganization [or liquidation], the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Article 2 lists all classes of claimants and their types of claims.

12

**Why Is Confirmation of a Plan of or Liquidation Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Liquidation?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPAIRED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** Article 2 of the Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is _____ Ballots should be mailed to the following address: Amanda M. Stofan, Farinash & Stofan, 100 West MLK Blvd., Ste. 816 Chattanooga TN 37402, amanda@8053100.com

## ARTICLE 8
## DEFINITIONS

**8.1.** The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

**8.2.** **Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**8.3.** **Administrative Convenience Class:** A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**8.4.** **Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**8.5** **Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**8.6.** **Allowed Claim**: Any claim filed against or deemed filed against the Debtor pursuant to Section 501, 502 or 1111(a) of the Code to the extent that: (a) a Proof of Claim was either timely filed, unnecessary under 1111(a), or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**8.7.** **Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**8.8.** **Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code

**8.9.** **Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**8.10.** **Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**8.11.** **Bankruptcy Court**: The United States Bankruptcy Court for the District of New Jersey.

**8.12.** **Bankruptcy Rules**:  The Federal Rules of Bankruptcy Procedure.

**8.13.** **Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**8.14.** **Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which

14

Restoration House LLC, is the Debtor-in-Possession.

**8.15** **Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**8.16.** **Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**8.17.** **Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**8.18.** **Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**8.19.** **Confirmation Hearing**: The hearing to be held on _____ to consider confirmation of the Plan.

**8.20.** **Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**8.21.** **Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**8.22.** **Debtor** and **Debtor-in-Possession**: Restoration House, LLC, the debtor-in-possession in this Chapter 11 Case.

**8.23.** **Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**8.24.** **Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**8.25.** **Effective Date**: The effective date of this Chapter 11 plan is 30 days after entry of the order confirming the plan unless the plan or confirmation order provides otherwise.

**8.26.** **Equity Interest**: An ownership interest in the Debtor.

**8.27.** **Executory Contracts**: All unexpired leases and executory contracts as described

15

in Section 365 of the Bankruptcy Code.

    **8.28.** **Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

    **8.29.** **IRC**: The Internal Revenue Code

    **8.30.** **Petition Date**: January 24, 2024 the date the chapter 11 petition for relief was filed.

    **8.31.** **Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

    **8.32.** **Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

    **8.33.** **Reorganized Debtor**: The Debtor after the Effective Date.

    **8.34.** **Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

    **8.35.** **Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

    **8.36.** **Trustee**: M. Aaron Spencer, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

    **8.37.** **Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

    Respectfully submitted,

    FARINASH & STOFAN
    By: /s/ Amanda M. Stofan
    AMANDA M. STOFAN (024734)
    Attorney for Restoration House LLC
    100 West M L King Blvd., Ste. 816
    Chattanooga, TN 37402
    (423) 805-3100
    Amanda@8053100.com

**Exhibit A – Liquidation Analysis**

**HYPOTHETICAL SALE OF PROPERTY SECURED BY THE TRIPPS**

| Value: | |
|---|---|
| 171 Greendale | $1,900,000.00 |
| TOTAL OF ALL ASSETS | $1,900,000.00 |
| Less estimated cost of sale | ($190,000.00) |
| Less estimated note to Builtwell | ($842,658.00) |
| *Subtotal Net Proceeds* | *$867,342.00* |
| Less Chapter 7 Trustee fee (25% up to $5,000) | ($1,250.00) |
| Less Chapter 7 Trustee fee (10% from $5,000 to $50,000) | ($4,500.00) |
| Less Chapter 7 Trustee fee (5%  $50,000 up to $1,000,000) | ($40,867.00) |
| **Liquidation Value:** | **$820,725.00** |

| | |
|---|---|
| **Total Liquidation Value:** | **$820,725.00** |